**Opinion filed April 18, 2013**



## In The

# Eleventh Court of Appeals

_____

## No. 11-11-00121-CR

_____

## MARKUS RAY SNEED, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 104th District Court

### Taylor County, Texas

### Trial Court Cause No. 17763B

### M E M O R A N D U M   O P I N I O N

Markus Ray Sneed entered an open plea of guilty to a first-degree felony offense of burglary of a habitation. After conducting a disposition hearing, the trial court found Appellant guilty of the offense. The trial court also found that Appellant used a deadly weapon in the commission of the offense. The trial court sentenced Appellant to confinement for life. We affirm.

*Issue on Appeal*

In his sole issue, Appellant contends that the trial court erred when it sentenced him to life in prison because the sentence is grossly disproportionate to the offense and, therefore, constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. *See* U.S. CONST. amend. VIII.

*Background Facts*

The indictment alleged two counts of burglary of a habitation. Count One alleged that, on or about October 7, 2009, "[Appellant] did then and there intentionally and knowingly enter a habitation without the effective consent of CHRISTOPHER DION LOPEZ, the owner thereof, and committed the felony offense of Aggravated Assault." Count One further alleged that Appellant used and exhibited a deadly weapon, specifically a handgun, during the commission of the offense. Count Two alleged that Appellant entered Lopez's habitation without Lopez's consent and committed the offense of theft.

At a plea hearing, Appellant entered an open plea of guilty to the first count in the indictment. The State did not proceed on the second count. Appellant judicially confessed to the facts alleged in Count One of the indictment. The trial court ordered a presentence investigation (PSI).

After the PSI was completed, the trial court held a disposition hearing. The PSI showed that, in addition to the instant cause, Appellant, who was twenty-one years old, had five other felony cases pending against him. Those cases included a burglary of a habitation charge, aggravated robbery charges, an evading arrest charge, and delivery and possession of controlled substance charges. Appellant also had misdemeanor charges pending against him. The PSI also showed that Appellant had been placed on probation twice while he was a juvenile.

The State presented witnesses at the disposition hearing. Marvin Armstrong and Christopher Dion Lopez testified about Appellant's commission of the offense in this cause. Armstrong and Lopez were cousins. On October 7, 2009, they lived at a house on Ambler Street. Armstrong testified that, on that date, a group of five people that included Appellant kicked open the back door of the house and then entered it. Armstrong knew all of the individuals who came into the house. Armstrong said that Appellant had a handgun and that the other four members of the group also had handguns. Appellant and another member of the group carried a television out of the house through the back door. Armstrong said that another

individual in the group put a gun to Lopez's head and dragged Lopez out the back door of the house. This individual and Lopez fell in the backyard. Armstrong said that all the individuals in the group got into a car and left the scene.

Lopez gave testimony that was similar to Armstrong's testimony. He said that five people entered the house through the back door. Lopez knew Appellant. Lopez initially testified that everyone in the group except Appellant had a gun, but later testified that Appellant also had a gun. Lopez said that Appellant and another member of the group took the television. Lopez said that two members of the group were holding guns to the back of his head and that they took him outside. He and one of the members of the group fell in the backyard. Lopez said that the group all left the scene in a car.

The State also presented evidence that Appellant had committed other serious offenses. Nathan Chastain testified that, on July 25, 2008, he had been at his friend's house. As Chastain drove his pickup away from his friend's house, he saw Appellant and a girl walking in the middle of the road. Chastain said that, as he proceeded to drive around them, Appellant pulled a black pistol out of his pants and pointed the gun at him. Chastain sped up and drove away. He called his father, and his father called the police. Chastain went back to his friend's house. He saw Appellant walking toward the house. Chastain said that a police officer arrived. Appellant put the gun into a trash can that was in front of Chastain's friend's house. Chastain said that the police found the gun in the trash can and the drugs that Appellant had thrown into the front yard of the house.

Abilene Police Officer Chad Jenkins testified that, on April 2, 2009, he received a report of an unauthorized use of a motor vehicle. That afternoon, Officer Jenkins and his partner, Agent Pope, saw the vehicle. Officer Jenkins said that the male driver of the vehicle pulled into a driveway on North Mockingbird. Agent Pope was driving the police vehicle. He pulled his vehicle into the driveway and parked it behind the other vehicle. Officer Jenkins said that a woman, who Officer Jenkins later determined was Deloris Brown, was standing next to the other vehicle and that she was talking to the driver of the vehicle. The driver looked backward in the officers' direction. Officer Jenkins and Agent Pope held up their badges to identify themselves to the driver as police officers. When the driver saw the badges, he drove his car out of the driveway and then cut across the yard at a high rate of speed. Officer Jenkins said that the driver almost ran over Brown as he was leaving the scene. Officer Jenkins yelled at the driver to stop,

but he did not. The driver drove off a curb, headed southbound on Mockingbird Street, and then turned right onto Ambler.

Officer Jenkins asked Brown if she knew the driver's name. She told Officer Jenkins that she only knew the driver as "Ray Ray." Agent Pope and Officer Jenkins got back in their vehicle and looked for the other vehicle. The officers found the vehicle on Briarwood Street. The driver of the vehicle had hit a parked car and then had fled the scene on foot. The officers could not locate the driver that day. Officer Jenkins determined that Appellant used "Ray Ray" as a nickname. Officer Jenkins testified that Brown identified Appellant from a photo lineup as being the person whom she was talking to in the driveway and who fled from the police on April 2, 2009.

Alicia Becerra testified that she had been convicted of an aggravated robbery that occurred on July 13, 2009. She said that three other individuals, including Appellant, were with her when the robbery was committed. Becerra said that she went to Leon Ellis Black's house and knocked on the door. Black was an elderly gentleman. Becerra had some flowers with her. When Black answered the door, Becerra told him that she was there to deliver flowers to his wife. Black told Becerra that his wife had passed away. Black also told Becerra to put the flowers on a table. Becerra testified that Appellant and two other individuals rushed into the house. Becerra said that Appellant had a gun. She said that Appellant pointed the gun at Black and told him to get on the ground. Becerra said that Black sat down on the ground and that he was scared and shocked. Becerra said that Appellant carried a television out of the house and that Appellant and another member of the group put the television in a pickup.

Abilene Police Officer Sue Belver testified that, on March 1, 2010, she had the SWAT team execute a warrant at an apartment. Appellant was named as a wanted person in the warrant. As the officers executed the warrant, Appellant attempted to crawl out a window on the second floor of the apartment. Officer Belver said that the officers detained Appellant and that a search of Appellant revealed that he was in possession of about 6.37 grams of crack cocaine.

After the evidence was concluded, the trial court found Appellant guilty of the offense, made an affirmative deadly weapon finding, and sentenced Appellant to life in prison. Appellant filed a motion for new trial in which he asserted that the punishment levied against him was "cruel, unusual, harsh and unjust." The motion was denied by operation of law. *See* TEX. R. APP. P. 21.8.

4

*Appellant's Eighth Amendment Claim*

In his sole issue, Appellant contends that his sentence is grossly disproportionate to the offense and that, therefore, the sentence is unjust, cruel, and unusual based on his crime, his age, and his need for rehabilitation.

As a general rule, punishment is not cruel and unusual if it falls within the range of punishment established by the legislature. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.); *Rodriguez v. State*, 71 S.W.3d 778, 779 (Tex. App.—Texarkana 2002, no pet.). In this cause, Appellant was convicted of a first-degree felony offense of burglary of a habitation. *See* TEX. PENAL CODE ANN. § 30.02(a)(1), (d) (West 2011). The statutory range of punishment for a first-degree felony offense is five to ninety-nine years or life and a fine not to exceed $10,000. *Id.* § 12.32. Appellant's life sentence is within the statutory range of punishment.

A narrow exception to the general rule is recognized when the sentence is grossly disproportionate to the offense. *Harmelin v. Michigan*, 501 U.S. 957, 1004–05 (1991) (Kennedy J., concurring); *Solem v. Helm*, 463 U.S. 277, 290–92 (1983); *Dale*, 170 S.W.3d at 799. In such cases, the sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Solem*, 463 U.S. at 290; *Diaz-Galvan v. State*, 942 S.W.2d 185, 186 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). Thus, a prohibition against grossly disproportionate punishment survives under the Federal Constitution apart from any consideration of whether the punishment assessed is within the statute's range. *Delacruz v. State*, 167 S.W.3d 904, 906 (Tex. App.—Texarkana 2005, no pet.). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289–90 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

In considering a claim that a sentence is disproportionate, we first make a threshold comparison of the gravity of an appellant's offense against the severity of his or her sentence. *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Dale*, 170 S.W.3d at 799–800. We consider the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Solem*, 463 U.S. at 292; *Dale*, 170 S.W.3d at 800. Only if we infer that the sentence is grossly disproportionate to the offense will we then compare the sentence received to sentences imposed for similar crimes in Texas and sentences imposed for the same crime in other jurisdictions. *McGruder*, 954 F.2d at 316; *Dale*, 170 S.W.3d at 800.

In this cause, Appellant pleaded guilty to the charged first-degree felony offense of burglary of a habitation. He admitted that he used a gun during the commission of the offense. Appellant took a television from the house. Another member of Appellant's group held Lopez at gunpoint and forced him out the back door of the house. The evidence showed that Appellant committed a similar home invasion crime against Black, who was an elderly gentleman. During the commission of that offense, Appellant exhibited a gun and ordered Black to get on the ground at gunpoint. Black was scared and shocked. Appellant took a television from Black's house. In another incident, Appellant pointed a gun at Chastain as Chastain was driving down the road. Thus, the evidence showed that Appellant had exhibited a gun during the commission of three offenses. In another incident, Appellant almost ran over Brown with a vehicle when he sped away from the driveway to evade Officer Jenkins and Agent Pope. In yet another incident, Appellant attempted to evade officers when they executed a warrant. On that occasion, a search of Appellant revealed that he was in possession of cocaine.

Considering the serious nature of Appellant's offense in this cause and considering the evidence of the other serious offenses committed by Appellant, we conclude that Appellant's sentence is not grossly disproportionate to the offense. Therefore, we do not compare Appellant's sentence to sentences imposed for similar crimes in Texas and sentences imposed for the same crime in other jurisdictions. *McGruder*, 954 F.2d at 316; *Dale*, 170 S.W.3d at 800. The trial court did not err when it sentenced Appellant to life in prison or when it allowed Appellant's motion for new trial to be denied by operation of law. Appellant's issue is overruled.

## *This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL
JUSTICE

April 18, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.